## Richmond

COUNTY BOARD OF ARLINGTON COUNTY v.
DOMINICK FOGLIO, ETC., ET AL.

June 10, 1974.

Record No. 730657.

Present, All the Justices.

*Lee F. Davis, Jr. (Charles G. Flinn, Assistant County Attorney; R. Harvey Chappell, Jr.; Christian, Barton, Parker, Epps & Brent,* on brief), for plaintiff in error.

*LeRoy E. Batchelor,* for defendants in error.

Poff, J., delivered the opinion of the court.

Owners of motels in Arlington County [1] (Taxpayers) filed a petition under Code § 58-1145 (Repl. Vol. 1969) against the County Board of Arlington County (Board) seeking relief from the business license tax levied upon them. The trial court granted the petition.

In 1949, following a 1948 study conducted by the Bureau of Public Administration for the University of Virginia, the Board

---

[1] Dominick Foglio, t/a Airport Motel; Jeswin Operating, Inc., t/a Pentagon Motel; Whitestone Motor Inn, Inc., t/a Holiday Inn of Arlington; Cherry Blossom Motel, Inc., t/a Cherry Blossom Motor Inn; Charles J. Clowser, Bonita Paynich, David Leslie Clowser, Deborah Lynn Clowser, t/a Highlander Motor Inn; Virginia Hotel Management Company, Inc., t/a Arva Motel; Alan S. Feldman and Gilbert Gertner, t/a South Gate Motor Hotel; Lloyd E. Goff, Ray W. Goff, Harold Fred Goff, and Donald E. Goff, t/a Clarendon Motel Court; Arthur M. Pomponio and Arthur R. Pomponio, t/a King Arthur's Court; QMC Maryland, Inc., t/a Park Arlington Motel; Hospitality Management Co., Inc., t/a Hospitality House Motor Inn; Marriott Hotels, Inc., t/a Crystal City Marriott, Key Bridge Marriott and Twin Bridges Marriott; Fred G. Behm and E. G. Reinsch, t/a Iwo Jima Motor Hotel; F. M. Perper and H. E. Perper, t/a Holiday Inn, National Airport; Harold E. Perper t/a Holiday Inn, Rosslyn; and Harry C. Simon, t/a Embassy Motel.

enacted a Business Privilege License Ordinance. Section 11-2 of the ordinance provided in part:

"It is the purpose and policy of the county board, in enacting this chapter imposing license taxes for the privilege of conducting business . . . to equalize as far as practicable the burden of such license taxation . . . by adopting . . . a system of license taxes measured by the gross receipts of the business . . . ."

For taxable year 1959, the Board increased the license tax rate on hotels and motels from $0.36 to $2.00 per $100 of gross receipts. The new rate did not conform to the comparative operating margin standard adopted and applied pursuant to the 1948 study and later studies, but there was a "gentlemen's agreement" that Taxpayers could pass the tax along to their customers by stating it separately on customer bills. In 1970 the Board enacted an additional ordinance creating a transient occupancy tax payable by customers as a surcharge on their bills. Thereupon, the Commissioner of the Revenue rescinded the "gentlemen's agreement" and the Board reduced the license tax rate to $0.50 per $100 gross receipts for taxable year 1971. By an amendment to the 1949 ordinance enacted in 1971, the Board increased the license tax rate for taxable year 1972 to $2.00 per $100 gross receipts, and Taxpayers filed their petition.

By final order entered April 12, 1973, the trial court found that the Board, "without evidence of a change in the Hotel-Motel Industry's profit margin, arbitrarily enacted a rate . . . which increased the rate Three Hundred Percent (300%) above the formula rate, in violation of equalizing provisions. . . ." And, "being of the opinion that the ends of justice would be met by making an adjustment", the trial court "exonerated" Taxpayers from payment of the 1972 license taxes levied under the rate fixed in the 1971 amendment, "established" the rate for 1972 at $0.50 per $100 gross receipts, and "directed" the Treasurer of Arlington County to refund to Taxpayers so much of the taxes paid as exceed taxes due under the rate fixed by the trial court.

The Board and Taxpayers agree that this appeal poses no constitutional issues concerning reasonableness of classification or uniformity of assessment, and Taxpayers concede that the license tax rate fixed in the 1971 amendment is not confiscatory or prohibitive. The Board argues that the statutory authority

granting a court discretion to reduce license and other tax rates, upon which the trial court relied, had earlier been declared unconstitutional and that, absent express authority in a constitutional statute, the trial court had no power to reduce license tax rates fixed by a legislative body which were not confiscatory or prohibitive. We agree.

In *City of Waynesboro* v. *Keiser*, 213 Va. 229, 233-34, 191 S.E.2d 196, 199 (1972), we agreed with the City's argument that "the portion of the 1968 amendment to [Code § 58-1145] which permits adjustments 'if the court in its discretion finds the ends of justice would be met by making an adjustment . . .' is unconstitutional." We found that portion to be vague and overbroad with no decisional guidelines or standards and an unconstitutional delegation of legislative power. It is clear, not only from the language of the final order itself, but also from the oral opinion announced at the conclusion of the hearing below, that the trial court relied for its authority to act upon statutory authority which had been invalidated.

Nor could the trial court rely for its authority upon the uniformity provisions of the Virginia Constitution for they "apply only to a direct tax on property, and not to license taxes." *Bradley & Co.* v. *City of Richmond*, 110 Va. 521, 525, 66 S.E. 872, 874 (1910), *aff'd*, 227 U.S. 477 (1913).

We find no merit in Taxpayers' contention that the trial court had inherent judicial power to enforce the equalization policy of the 1949 ordinance by setting aside the 1971 amendment. The 1971 amendment, like the ordinance it amended, was a legislative act, and even had it expressly repealed Section 11-2, it would not have been subject to judicial review unless the rate it imposed was confiscatory or prohibitive. *See Langston* v. *Danville*, 189 Va. 603, 54 S.E.2d 101 (1949).

"The power of taxation, under our system of government, rests with the legislative and not with the judicial department, and its province cannot be invaded by the courts. Where the power to tax for revenue purposes exists, the amount of the tax is in the discretion of the legislative body, and it may be carried to any extent within the jurisdiction of the State or corporation which imposes it which the will of such State or corporation may prescribe. If the power is exercised in an unwise, unjust and oppressive manner to any particular class,

the remedy, within constitutional bounds, is by an appeal, not to the courts, but to the justice and patriotism of the representatives of the people. [Citations omitted]." *Bradley & Co.* v. *City of Richmond*, 110 Va. at 525, 66 S.E. at 874.

Accordingly, we hold that the trial court acted without authority, and the judgment is reversed and final judgment is entered here for the Board.

*Reversed and final judgment.*