## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### ARMOUR & CO. v. CITY OF RICHMOND.

January 13, 1916.

Absent, Cardwell, J.

1. LICENSE—*Validity of City Ordinance—Municipal Corporations—Taxation.*—In the imposition of a special occupation license tax by a municipal corporation, the designation of the subject of the tax and the object upon which it is to operate are both essential to the complete exercise of the legislative power conferred. The absence of either in a municipal ordinance imposing such a tax *per se* renders the ordinance incomplete and inoperative.

2. MUNICIPAL CORPORATIONS—*License—Delegation of Power—Ad Valorem System—Taxation.*—A municipal ordinance imposing a license tax on certain enumerated occupations and on "such other business as cannot, in the opinion of the committee on finance, be reached by the *ad valorem* system" is incomplete and inoperative as to occupations sought to be reached by the general classification. What occupations cannot be reached by the *ad valorem* system is a legislative question to be determined by the council alone, and cannot be delegated to its committee on finance.

3. ESTOPPEL—*License—Taxation—Municipal Corporations.*—The fact that a person has paid without protest for a number of years a municipal license tax does not estop him from resisting the payment of a further license tax under the same or a similar ordinance, if the ordinance itself is invalid.

Error to a judgment of the Hustings Court of the city of Richmond, affirming a judgment of the police justice of said city imposing a fine for the violation of a city ordinance.

*Reversed.*

The opinion states the case.

*O'Flaherty, Fulton & Byrd,* for the plaintiff in error.

*H. R. Pollard* and *Geo. Wayne Anderson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Plaintiff in error, Armour & Company, is a foreign corporation doing business as meat packers, with factories located in the cities of Chicago and Kansas City. The business embraces wholesale dealings in meats and provisions, including all sorts of meat products, tongues, hams, etc., and soap, grape juice, crushed fruit and the like. The corporation has a branch house in the city of Richmond to which its products are consigned from its factories for sale.

For the refusal by plaintiff in error to pay what is styled a special license tax of $400 for doing a fresh meats and provision business, a fine was imposed upon the corporation by a police justice of the city, whose judgment was affirmed on appeal to the hustings court, and to that judgment this writ of error was awarded.

The sole question which we need to consider is the validity of that tax, and that depends upon the construction of section 5 of chapter 15 of the city code.

Section 5 declares that, "All persons desiring to prosecute in the city any business as auctioneers, agents for the sale or renting of real estate, subagents for the sale or renting of real estate, commission merchants, traders, brokers, private bankers, keepers of ordinaries, houses of private entertainment, eating houses or cook shops, city scavengers, surveyors, title examiners (other than licensed attorneys), advertising agents, bill posters and distributors, and such other business as cannot, in the opinion of the committee on finance, be reached by the *ad valorem* system, shall pay a special license tax for the privilege of prosecuting such business. Such persons shall be divided into thirteen classes, and the tax to be paid by them shall be, if of first-class, eight hundred dollars; second, six hundred dollars; third, four hundred dollars; fourth, three hundred dollars; fifth, two hundred and fifty dollars; sixth, two hundred dollars; seventh, one hundred

and fifty dollars; eighth, one hundred dollars; ninth, seventy-five dollars; tenth, fifty dollars; eleventh, thirty dollars; twelfth, twenty dollars; thirteenth, ten dollars.

The ordinance first specifies fifteen occupations, each of which is to be taxed for the privilege of prosecuting such business, and then adds: *"and such other business as cannot, in the opinion of the committee on finance, be reached by the ad valorem system."* The section then provides for the classification of the enumerated occupations and such others as the finance committee may be of opinion cannot be reached by the *ad valorem* system.

Briefly stated, the opposing contentions are these: (a) On behalf of the city of Richmond, that the language italicized merely confers on the finance committee the duty of discharging the ministerial act of determining what businesses, other than those enumerated, cannot be reached by the *ad valorem* system, and after such ascertainment to classify them as provided in sections 5 and 18; (b) while plaintiff in error insists, that the ordinance itself must first designate the occupation to be taxed, and that when such legislative designation has been made, the classification of the persons engaged in the occupation so designated may be delegated to the finance committee.

It would seem clear that in the imposition of a special occupation license tax, the designation of the subject of the tax and the object upon which it is to operate are both essential to the complete exercise of the power. Therefore, the absence of either would *per se* render the legislative act incomplete and inoperative. If that be true, it follows that further action must be taken to vitalize the incomplete act; and such action necessarily must emanate from a legislative and not an administrative source. *Proprio vigore,* the ordinance does not impose a special occupation license tax on other businesses, but only on such other businesses as the committee on finance may be of opinion cannot be reached by the *ad valorem* system.

So that at last the other occupations which are to be amenable to the tax are determinable, not by the terms of the ordinance or the city council, but rest upon the opinion and discretion of the finance committee alone.

· The city attorney, in his brief, says: "While it is true that some legislative body must determine whether a business can be reached by the *ad valorem* system, yet that does not mean that the legislative body may not prescribe by suitable terms the character and kind of a business which is to be taxed."

That admission, if sound, and we think it is sound, is conclusive of this case, since it is not pretended that any legislative body has ever determined that the business of the plaintiff in error cannot be reached by the *ad valorem* system.

In *Gordon* v. *Newport News*, 102 Va. 649, 47 S. E. 828, it was held: "The power of the legislature to impose a license tax is only limited by the constitutional provision declaring that it 'may levy a license tax upon any business which cannot be reached by the *ad valorem* system;' and whether it can or cannot be so reached is primarily a question for the legislature to determine, and its decision will not be disturbed by the courts except in case of a plain deviation from the constitutional requirement." On the same point see *Bradley* v. *City of Richmond*, 110 Va. 521, 66 S. E. 872.

The language italicized was incorporated in section 5 in 1906, and has never been before this court for construction.

In the cases of *Ould & Carrington* v. *Myers*, 23 Gratt. (64 Va.) 383, and *Bradley* v. *Richmond, supra,* the ordinance enumerated the occupations to be taxed. The former case merely involved a question of classification, which was held not to be a legislative but a ministerial duty; and in the latter, the contention, among others, was that as matter of fact, the business could be reached by the *ad valorem* system.

*Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294 and *United States* v. *Grimaud,* 220 U. S. 520, 31 Sup. Ct. 480, 55 L. Ed. 563 were cited in support of the lawfulness

of the delegation of power to the finance committee. Yet in both of those cases the distinction is observed between "the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Reliance also is had on the circumstance that plaintiff in error, having paid this tax for years without protest, should now be estopped to deny its validity. To sustain that contention, the following quotation from the opinion of Mr. Justice Holmes in *Western Union Telegraph Co.* v. *City of Richmond,* 224 U. S. 160, 171-172, 32 Sup. Ct. 449, 452, 56 L. Ed. 710, is made: "We agree with the court below that if the appellant, as is found, has paid the charges without complaint for many years, it would require something more than a mere protest now to induce us to find it unreasonable."

That case involved the power of the city to make *reasonable regulations* respecting the occupancy of its streets by the telegraph company; and the court was of opinion that the fact that the company had paid the tax imposed without complaint for over twenty years, strongly tended to show its reasonableness.

We are of opinion that the council of the city of Richmond was without authority to delegate to the finance committee the discretion to determine whether an undesignated business could or could not be reached by the *ad valorem* system; and that the special occupation tax imposed upon the plaintiff in error by virtue of such unlawful delegation is illegal and unenforcible. This view is decisive of the case and renders the consideration of the remaining assignments of error unnecessary.

The judgment of the hustings court must be reversed, and this court will enter an order, such as that court ought to have made, dismissing the warrant and prosecution.

*Reversed.*